## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**CHARLES W. SNYDER,**

    **Plaintiff,**

**v.**                                                                                                     No. 19-cv-0115 SMV

**ANDREW SAUL,[1]**
**Commissioner of the Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 19], filed on June 21, 2019. The Commissioner responded on September 19, 2019. [Doc. 22]. Plaintiff replied on November 1, 2019. [Doc. 27]. The parties have consented to my entering final judgment in this case. [Doc. 9]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Plaintiff fails to show that the Administrative Law Judge ("ALJ") either applied an incorrect standard of law or that his findings were not supported by substantial evidence. That is, Plaintiff fails to show any reversible error in the ALJ's evaluation of the Dr. Draper's opinion, Dr. Greene's opinion, or Plaintiff's own subjective-symptom allegations. The Motion will be denied, and the Commissioner's final decision, affirmed.

---

[1] Andrew Saul is the current Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481 (1980). The Tenth Circuit, however, has held that in some situations, a court must consider evidence beyond that which was before the ALJ. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207−08 (10th Cir. 2006); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Pursuant to the regulations, any new and material evidence that relates to the period on or before the date of the ALJ's decision must be considered by the Appeals Council in determining whether to review the ALJ's decision. 20 C.F.R. § 416.1468 (2017); 20 C.F.R. § 416.1470(b) (1987). Although Plaintiff initially challenged the Appeals Council's handling of certain evidence, [Doc. 19] at 15–19, he later withdrew his challenge, [Doc. 27] at 1. Accordingly, this case fits the general framework, and the Court reviews the ALJ's decision as the Commissioner's final decision.

supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

The "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quoting *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984)).

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A) (2015); 20 C.F.R. § 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920 (2012); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. § 416.920(a)(4)(i)–(iv); *see Grogan*, 399 F.3d at 1261. If he cannot show that his impairment

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for supplemental security income on November 3, 2014. Tr. 154. He alleged a disability-onset date of July 24, 2014. *Id.* His claims were denied initially and on reconsideration. *Id.* Administrative Law Judge ("ALJ") Michael Leppala held the first administrative hearing on February 17, 2017, in Albuquerque, New Mexico. Tr. 154, 311–62. Plaintiff appeared with his attorney and gave testimony. *Id.* The ALJ also heard testimony from Thomas A. Greiner, an impartial vocational expert ("VE"). *Id.* At the end of the hearing, Plaintiff's attorney requested a consultative psychological examination, which was performed on September 25, 2017, by John Draper, Ph.D. Tr. 909–12. ALJ Leppala held a second hearing on March 30, 2018, in Albuquerque. Tr. 154, 363–92. Plaintiff appeared in person with his attorney. *Id.* The ALJ took testimony from Plaintiff and VE Sandra Trost. *Id.*

The ALJ issued his unfavorable decision on May 22, 2018. Tr. 165. At step one, he found that Plaintiff had not engaged in substantial gainful activity since November 3, 2014, the date of application. Tr. 156. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: ankylosing spondylitis, dysfunction of major joints, and obesity. Tr. 157. The ALJ also found that Plaintiff's hypertension and depression were not severe. Tr. 157–58.

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 158–59. Because none of Plaintiff's

impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 159–64. The ALJ found that Plaintiff had:

> the [RFC] to perform light work as defined in [20 C.F.R. §] 416.967(b) except he is further limited to frequently climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; frequently balancing; occasionally stooping; frequently kneeling; and occasionally crouching. He must avoid all exposure to hazards.

Tr. 159.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 164. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 164–65. He found that Plaintiff could perform other jobs, such as fast food worker, cashier II, and bottle packer, that exist in significant numbers in the national economy. *Id.* Accordingly, the ALJ found that Plaintiff was not disabled. *Id.*

Additionally, the ALJ made an alternative finding on the issue of unskilled work. Tr. 165. He found that "[a]lthough [Plaintiff]'s depression was found to be a non-severe impairment based on the medical evidence of record, the positions of bottle packager and silver wrapper could be performed even if [Plaintiff] were limited to simple, routine[,] repetitive tasks and jobs involving work primary with things and not people." *Id.* In other words, the ALJ found that even if Plaintiff had been additionally limited to unskilled work in the RFC assessment, he would still be able to perform other work at step five, namely the jobs of bottle packager and silver wrapper. *Id.* The Appeals Council denied review on December 13, 2018. Tr. 1–7. Plaintiff timely filed the instant action on February 12, 2019. [Doc. 1].

**Discussion**

Plaintiff fails to show any reversible error in the ALJ's evaluation of the Dr. Draper's opinion, Dr. Greene's opinion, or Plaintiff's own subjective-symptom allegations. The ALJ's reasons for rejecting Dr. Draper's and Dr. Greene's opinions are supported by substantial evidence. Moreover, the Court is able to follow the ALJ's reasons for his evaluation of Plaintiff's subjective symptoms. Plaintiff fails to show reversible error.

I. Plaintiff fails to show error in the
ALJ's evaluation of Dr. Draper's consultative opinion.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 416.927(e)(2)(ii) (2012)[4]). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight he assigns to each medical source opinion and why. *Id.* When evaluating the opinion of any medical source, the ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. § 416.927(c). Not every factor will apply in each case, and therefore, an ALJ is not required to discuss every factor. Social

---

[4] These regulations apply to this case because Plaintiff's claims were filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

Security Ruling ("SSR") 06-03p,[5] 2006 SSR LEXIS 5 at *5. "[T]he ALJ's decision is sufficient if it permits [the court] to follow the adjudicator's reasoning." *Keyes-Zachary*, 695 F.3d at 1164 (internal quotation marks omitted).

Moreover, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p,[6] 1996 SSR LEXIS 2, at *13, (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. § 416.927(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

Here, the ALJ accorded "limited weight" to Dr. Draper's opinion. Tr. 163. He explained that "although the opinion was offered following a thorough mental status examination, it [was] internally inconsistent." *Id.* Next, the ALJ found that while Plaintiff "told [Dr. Draper] that he

---

[5] SSR 06-03p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Plaintiff's claims were filed before March 27, 2017, SSR 06-03p applies to this case.
[6] SSR 96-5p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Plaintiff's claims were filed before March 27, 2017, SSR 96-5p applies to this case.

had difficulties with memory and concentration, . . . during the testing, he displayed no difficulties with concentration." *Id.* Based on that discrepancy, the ALJ deduced that Dr. Draper's assessed limitations were based "at least in part, on [Plaintiff]'s subjective reports rather than objective observations." *Id.* Plaintiff challenges these reasons as "inadequate." [Doc. 19] at 20.

First, Plaintiff challenges the ALJ's finding of internal inconsistency in the medical opinion. *Id.* Plaintiff argues that the ALJ failed to sufficiently point out the specific internal inconsistencies himself. *Id.* Plaintiff does not argue that the opinion is not internally inconsistent. *See id.* Nor does he argue that substantial evidence does not support a finding of internal inconsistency. Rather, Plaintiff argues that the ALJ did not discuss portions of the opinion that were more favorable to him, by supporting limitations in concentration and memory. For example, Plaintiff complains that the ALJ did not "reveal that [Plaintiff] had difficulty with his fund of knowledge and memory with distractor." *Id.* (citing Tr. 911). The ALJ, however, was not required to discuss every piece of evidence.

More to the point, there is substantial evidence to support the ALJ's finding that Dr. Draper's opinion was internally inconsistent. The internal inconsistencies are patent, even on a cursory read, often within the same paragraphs. *See* Tr. 909–15. For example, on the one hand, Dr. Draper notes that Plaintiff "is delayed in completing [his activities of daily living] because of . . . concentration problems." Tr. 911. On the other hand, in the same paragraph, Dr. Draper notes that "[Plaintiff] is able to concentrate enough to read a book," and can do so, along with other activities, "for an unlimited amount of time." *Id.* On the one hand, Dr. Draper diagnosed Plaintiff with attention-deficit hyperactivity disorder with predominantly inattentive presentation and estimated that his prognosis was "poor to fair considering [his] attention, memory problems[, and

8

other issues]." *Id.* On the other hand, however, Dr. Draper opined that Plaintiff's "[s]ustained concentration and persistence [were] intact[, and his] ability to understand, remember, and carry out instructions [was] not impaired." Tr. 912. These portions of Dr. Draper's opinion are explicitly inconsistent. The ALJ's finding of internal inconsistency is supported by substantial evidence.

Plaintiff also challenges the ALJ's finding that Dr. Draper's opinion appeared to be based on Plaintiff's subjective reports rather than the doctor's objective observations. [Doc. 19] at 20; Tr. 163. The ALJ explained that because Dr. Draper assessed some limitation in the ability to concentrate even though Plaintiff had displayed no difficulties with concentration during testing, Dr. Draper must have been relying on Plaintiff's own subjective report in making his assessment. *Id.* Plaintiff correctly points out that an ALJ must have a legal or evidentiary basis for attributing a doctor's opinion to a claimant's subjective complaints. [Doc. 19] at 20–21 (citing *Langley*, 373 F.3d at 1121.). The ALJ, in fact, pointed to the evidentiary basis, namely that "during the testing, [Plaintiff] displayed no difficulties with concentration." Tr. 163. Plaintiff does not challenge that characterization of his testing performance. *See* [Doc. 19]. Plaintiff fails to show error in the ALJ's evaluation of Dr. Draper's opinion.

II. Plaintiff fails to show error in the ALJ's evaluation of Dr. Greene's treating opinion.

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. § 416.927(c)(2). This is known as the "treating physician rule."[7] *Langley*, 373 F.3d at 1119. The idea is that a treating physician

---

[7] Defendant agrees that the treating physician rule applies to this case because Plaintiff filed his claims prior to March 17, 2017. *See* [Doc. 22] at 1 n.2; *see* 82 Fed. Reg. 5844 (Jan. 18, 2017).

9

provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

In order to receive controlling weight, a treating physician's opinion must be both supported by medical evidence and consistent with the record. If not, the opinion may not merit controlling weight but still must be given deference and weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. § 416.927(c). However, not every factor is applicable in every case, nor must an ALJ always analyze all six factors. What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight he ultimately assigns to the opinion. *Langley*, 373 F.3d at 1119; *see Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004); 20 C.F.R. § 416.927(c)(2).

In this case, the ALJ accorded Dr. Greene's treating opinion "little weight" because (1) "she had only been treating [Plaintiff] for two weeks when it was completed"; (2) "the limitations opined are more severe than indicated elsewhere in the record"; and (3) "Dr. Greene explicitly stated that many of the limitations were based on [Plaintiff]'s reports, rather than medical

or clinical findings." Tr. 163. Plaintiff challenges the ALJ's reasons for rejecting Dr. Greene's opinion as "not legitimate." [Doc. 19] at 22.

First, Plaintiff challenges the ALJ's reliance on the two-week treatment history to discount Dr. Greene's opinion. *Id.* at 22–23. Plaintiff points out that he had been treating with Presbyterian Healthcare System for more than two years, and as a provider at Presbyterian, Dr. Greene had access to those records. *Id.* at 22. Plaintiff further argues that, not only did Dr. Greene have access to the records, but her own treatment note that day reflected that she reviewed Plaintiff's "history." *Id.* at 22 (citing Tr. 189). As Plaintiff sees it, therefore, the ALJ's "findings are not supported by substantial evidence." *Id.* at 23 (internal quotation marks omitted). The Court is not persuaded. Dr. Greene herself recorded, as part of her opinion, that she had been treating Plaintiff for two weeks. Tr. 906. Plaintiff does not dispute that she, in fact, had only treated him for two weeks when she drafted her opinion. *See* [Doc. 19]. Length of treatment relationship is one of the factors to be considered by the ALJ in weighing a treating opinion. § 416.927(c)(1). The ALJ's finding (that Dr. Greene had been treating Plaintiff for two weeks) is supported by substantial evidence, and his reliance on that detail in weighing the opinion was proper. Plaintiff fails to show error.

Second, Plaintiff challenges the ALJ's finding that Dr. Greene's limitations were more severe than others in the record. [Doc. 19] at 23. He points out that the ALJ failed to provide any citations to the record to support his finding, and Plaintiff argues, therefore, that the ALJ's finding is too vague to stand. *Id.* (quoting *Lewis v. Berryhill*, 680 F. App'x 646, 647–48 (10th Cir. 2017)). Plaintiff does not argue—much less show—that substantial evidence does not support the ALJ's finding that Dr. Greene's limitations were not more severe than others in the record. *Id.* He simply argues that the ALJ did not "show his work" and so remand is warranted.

Defendant responds that the ALJ's finding (that Dr. Greene's assessed limitations were more severe than others found in the record) is supported by substantial evidence, to wit: the limitations assessed by the non-examiners, Drs. Werner and Mamaril. [Doc. 22] at 15–16 (citing Tr. 393–411). Plaintiff does not disagree. *See* [Doc. 27] at 5–8. Instead, Plaintiff moves in another direction. He replies with citations to medical evidence that he believes could support Dr. Greene's opinion. [Doc. 27] at 7. Plaintiff cites objective imaging, serologies, physical testing, and observations. *Id.* The Court agrees that this evidence could be seen as supporting Dr. Greene's opinion. But it could also be seen as supporting the opinions of Dr. Werner and Dr. Mamaril (that Plaintiff is capable of light work). Reviewing the medical evidence cited by Plaintiff does not undermine the ALJ's finding that Dr. Greene's assessed limitations are more severe than others in the record. Plaintiff fails to show error.

Third, Plaintiff challenges the ALJ's reliance on Dr. Greene's explicit statements that the assessed functional limitations were based on Plaintiff's own self reports. [Doc. 19] at 23–24 (Plaintiff's arguments). Tr. 905, 907 (Dr. Greene's notations of "per patient report" or similar). Plaintiff argues that Dr. Greene's assessed functional limitations were based on the diagnosis of ankylosing spondylitis, which the doctor also explicitly noted in her report. [Doc. 19] at 23 (quoting Tr. 906). The problem for Plaintiff is that Dr. Greene herself documented in her report that the functional limitations were "per patient report," Tr. 905, and "answer per patient," Tr. 907. These notations constitute substantial evidence to support the ALJ's finding. Plaintiff fails to show error. Plaintiff's arguments and authorities fail to show any error in the ALJ's weighing of Dr. Greene's opinion, and remand is not warranted.

### III. Plaintiff fails to show error in the ALJ's evaluation of Plaintiff's subjective allegations of pain and other symptoms.

In evaluating the symptoms reported by a claimant, the ALJ utilizes a two-step process. SSR 16-3p, 2016 SSR LEXIS 4, at *5–10. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the reported symptoms. *Id.* at *5. Second, the ALJ evaluates the "intensity and persistence" of the symptoms, such as pain, and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.* at *9. In considering the "intensity, persistence, and limiting effects" of a claimant's symptoms, the ALJ examines "the entire case record." *Id.* at *9–10. For example, the ALJ should consider the claimant's:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at 18–19; *see* 20 C.F.R. § 416.929(c)(3)(i)–(vii) (2011).

If the claimant's "statements about the intensity, persistence, and limiting effects" of his symptoms are consistent with the evidence of record, the ALJ will determine that the symptoms are "more likely to reduce [his] capacities to perform work-related activities." SSR 16-3p, 2016

13

SSR LEXIS 4, at *20. If they are not consistent, the ALJ will find that symptoms are "less likely to reduce [his] capacities to perform work-related activities." *Id.* Moreover, the ALJ will consider the claimant's attempts to seek medical treatment for his symptoms, whether he has followed the recommended treatment, as well as the possible reasons for lack of treatment compliance. *Id.* at *22–23.

The ALJ's decision must contain more than conclusory findings. *Id.* at *26. A recitation of the factors is not adequate. *Id.* "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

In this case, the ALJ found that "[Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* Additionally, he found that the medical evidence did not show that "the combination of [Plaintiff's] impairments [was] as severe as to preclude all work in the national economy." *Id.* Beyond these boilerplate findings, the ALJ also made findings specific to Plaintiff. For example, he found that the medical evidence indicated that "at appointments since November 2014, clinical findings [were] generally . . . mild to moderate." *Id.* He found that "while the record consistently show[ed] limited range of motion and tenderness, findings frequently included normal gait, full range of motion in the hips, and full strength." *Id.* The ALJ also found that Plaintiff's treatment regimen significantly reduced his symptoms and increased his activity tolerance. *Id.* The ALJ found that Plaintiff engaged in "a

14

somewhat normal level of daily activity and interaction." *Id.* For example, the ALJ noted that Plaintiff performed household chores, yard work, played video games, and drove. *Id.* Finally, the ALJ seemed to hold against Plaintiff his lack of perfect treatment compliance, even though Plaintiff had trouble with his insurance. *Id.* ("While [the ALJ was] cognizant of the limitations of health insurance coverage, in order to receive benefits, a Claimant must follow prescribed treatment if this treatment can restore the ability to work. Failure to follow prescribed treatment without good reason may be taken into consideration in not awarding benefits.").

Plaintiff argues that the ALJ improperly discounted his subjective allegations of pain, mobility issues, insomnia, and depression. [Doc. 19] at 24–26. He makes three challenges. First, he argues that the ALJ's findings are mere boilerplate or, at most, are conclusions in the guise of findings. *Id.* at 24 (citing Tr. 162). Second, he argues that the ALJ improperly weighed his treatment non-compliance. *Id.* at 24–25. Third, he argues that the ALJ omitted Plaintiff's persistent attempts to find relief from his chronic pain and mobility issues. *Id.* at 26.

The Court agrees that some of the ALJ's findings are mere boilerplate. *See* Tr. 162. However, the ALJ made other, specific subjective-symptom findings. *See id.* The Court also agrees with Plaintiff on the issue of treatment non-compliance. To the extent the ALJ discounted Plaintiff's subjective reports of his symptoms on the ground that he was treatment non-compliant, such finding is not legitimate when the ALJ acknowledged that the "non-compliance" was attributable to problems with insurance. *See* SSR 16-3p, 2016 SSR LEXIS 4, at *22–23 (one legitimate reason for lack of treatment compliance may be than "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services."). Nevertheless,

the ALJ gave other, unchallenged reasons for discounting Plaintiff's subjective reports of pain and other symptoms.

Finally, the ALJ's subjective-symptom findings would have been more complete (and perhaps more favorable to Plaintiff), if the ALJ had discussed and relied on the evidence on Plaintiff's persistent attempts at pain relief. However, Plaintiff fails to show the ALJ's failure to do so amounts to reversible error. There is no requirement that the ALJ made findings on each and every factor. *See* SSR 16-3p; 20 C.F.R. § 416.929. Even disregarding the boilerplate statements and the finding on treatment non-compliance, other findings remain. Those other findings satisfy the ALJ's duty under SSR 16-3p. (Indeed, Plaintiff does not argue otherwise.) And those findings are legitimate and supported by substantial evidence. Plaintiff fails to show reversible error in the ALJ's evaluation of his subjective allegations of pain and other symptoms.

## Conclusion

Plaintiff fails to show that the ALJ's findings are not supported by substantial evidence or that he applied an incorrect legal standard in weighing Dr. Draper's opinion, Dr. Greene's opinion, or his own subjective allegations of pain and other symptoms. As Plaintiff fails to show any reversible error, the Motion is not well-taken and will be denied.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 19] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**